UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
        :
UNITED STATES OF AMERICA,       :
        :      18-CR-602 (JMF)
  -v-       :
        :      OPINION AND ORDER
MICHAEL COHEN,       :
        :
              Defendant.      :
        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Defendant Michael Cohen pleaded guilty to evading income taxes, lying to banks and Congress, and violating campaign finance laws. *See* ECF No. 23.[1] On December 12, 2018, citing this "veritable smorgasbord of fraudulent conduct," ECF No. 31, at 31, the Honorable William H. Pauley sentenced Cohen principally to thirty-six months' imprisonment, followed by three years' supervised release. *See* ECF No. 29; *see also* 18-CR-850, ECF No. 16. Since that time, Cohen has applied multiple times for a reduction of his sentence, each time without success. First, in December 2019, Cohen moved for a reduction of his term of imprisonment pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure. *See* ECF No. 51. Judge Pauley denied that motion in March 2020. *See* ECF No. 72. Between July 2022 and May 2023, after the case was reassigned to the undersigned (due to the death of Judge Pauley), Cohen filed three motions for early termination of his term of supervised release (which is due to expire in November of this year). *See* ECF Nos. 77, 81, 84. The Court denied all three. *See* ECF Nos. 80, 83, 87. In this Opinion, the Court turns to a fourth motion for early termination of Cohen's supervised release and the question of whether sanctions are warranted for that motion's citation to three cases that do not exist.

---

[1]    Unless otherwise noted, all record citations are to 18-CR-602 (JMF).

## BACKGROUND

The relevant background begins with the Court's denial of Cohen's third motion for early termination. In opposing that motion, the Government alerted the Court to statements that Cohen had made in a then-recent book and on television. Specifically, "Cohen falsely wrote in a book he authored that he 'did not engage in tax fraud,' that the tax charges were 'all 100 percent inaccurate,' and that he was 'threatened' by prosecutors to plead guilty." ECF No. 86, at 3 (quoting MICHAEL COHEN, REVENGE 54 (2022)). And in an "attempt to distance himself from his guilty plea to making false statements to a financial institution about tax medallion liabilities, Cohen stated on television, 'first and foremost, there was no fraud in the medallions, I don't know even what he's talking about.'" *Id.* (citation omitted) (quoting *'Panic': Trump melting down over imminent 'arrest' says star witness Cohen*, MSNBC: THE BEAT WITH ARI MELBER (Mar. 20, 2023), https://shorturl.at/cvDI8). The Court denied Cohen's motion "substantially for the reasons set forth in the Government's letter" and singled out the statements from Cohen's book and television appearance. ECF No. 87, at 4 (endorsement). These statements, the Court stated, "suggest that a reduction of Defendant's supervised release term would not serve the purposes [of sentencing] incorporated by reference in 18 U.S.C. § 3583(e)" — the statute governing termination of supervised release — "including deterrence, rehabilitation, or proportionality." *Id.* (citing *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997)).

Undeterred, Cohen — through his counsel of record, David M. Schwartz — filed yet another motion seeking early termination of supervised release on November 29, 2023. *See* ECF No. 88 ("Def.'s Motion"). In his motion, Schwartz argued that there had "been a substantial change in circumstances" since the Court's most recent denial, namely Cohen's testimony "for two straight days in the case of the State of New York v. Donald J. Trump." *Id.* at 1. Schwartz asserted that Cohen had "endured two days of grueling cross examination" and that his testimony had "been widely lauded and publicized." *Id.* Cohen's "willingness to come forward and

provide truthful accounts of his experiences," Schwartz argued, "demonstrates an exceptional level of remorse and a commitment to upholding the law that cannot be denied by this Court or the United States Attorney General's [sic] Office." *Id.*

In support of his motion, Schwartz cited and described three "examples" of decisions granting early termination of supervised release that were allegedly affirmed by the Second Circuit. *See id.* at 2-3 (citing *United States v. Figueroa-Florez*, 64 F.4th 223 (2d Cir. 2022); *United States v. Ortiz* (No. 21-3391), 2022 WL 4424741 (2d Cir. Oct. 11, 2022); and *United States v. Amato*, 2022 WL 1669877 (2d Cir. May 10, 2022)). There was only one problem: The cases do not exist. Although the Government failed to point that fact out in its opposition to Cohen's motion, *see* ECF No. 90 ("Gov't Opp'n"), E. Danya Perry — who entered a notice of appearance on Cohen's behalf following the Government's submission, *see* ECF No. 91 — disclosed in a reply that she had been "unable to verify" the citations in Schwartz's filing. ECF No. 95 ("Def.'s Reply"), at 3 n.6. On December 12, 2023, the Court entered an Order to Show Cause directing Schwartz to show cause in writing "why he should not be sanctioned pursuant to (1) Rule 11(b)(2) & (c) of the Federal Rules of Civil Procedure, (2) 28 U.S.C. § 1927, and (3) the inherent power of the Court for citing non-existent cases to the Court." ECF No. 96, at 2. The Court directed that Schwartz provide "a thorough explanation of how the motion came to cite cases that do not exist and what role, if any, Mr. Cohen played in drafting or reviewing the motion before it was filed." *Id*. The Court reserved judgment on the motion itself. *See id.*

Schwartz (aided by his own counsel) and Cohen (aided by Perry) both responded to the Court's Order to Show Cause. *See* ECF Nos. 103-05. With one exception discussed below, they tell the same basic story. In early November 2023, Schwartz sent a draft of what would become

3

the November 29, 2023 motion to Cohen.  *See* Schwartz Decl. ¶ 4; Cohen Decl. ¶ 12.[2]  Cohen asked Perry (who had not yet entered an appearance in this case) to provide feedback on the draft, which she did.  Schwartz Decl. ¶¶ 5-7; Cohen Decl. ¶ 12.  One comment, which Cohen passed along to Schwartz, was that the motion should cite a few cases granting early termination. Schwartz Decl. ¶ 6; ECF No. 106 ("Schwartz Reply Decl."), ¶ 9; Cohen Decl. ¶ 13.  Schwartz adopted what he understood to be Perry's suggestions and sent subsequent drafts back to Cohen. *See* Schwartz Decl. ¶ 8.  On November 25, 2023, Cohen then sent three emails to Schwartz with the cases in question and summaries of the cases.  *See id.* ¶ 9; Cohen Decl. ¶ 15.  Cohen had obtained the cases and summaries from Google Bard, which he "did not realize . . . was a generative text service that, like Chat-GPT, could show citations and descriptions that looked real but actually were not.  Instead, [he had] understood it to be a super-charged search engine . . . ."  Cohen Decl. ¶ 20.  According to Cohen, he did not "have access to Westlaw or other standard resources for confirming the details of cases" and "trusted Mr. Schwartz and his team to vet [his] suggested additions before incorporating them" into what became the motion.  *Id.*

That trust proved unfounded.  Although Cohen's November 25, 2023 emails made no reference to Perry, Schwartz "believed" that the cases "had been found by Ms. Perry" given the earlier back and forth.  Schwartz Decl. ¶ 9; *see* Schwartz Reply Decl. ¶ 2.  "[B]ecause of Ms. Perry's reputation" as "a renowned and skilled trial lawyer," Schwartz "did not independently review the cases."  Schwartz Decl. ¶¶ 5, 10.  He notes that he "never contemplated that the cases cited were 'non-existent,'" *id.* ¶ 13, that their inclusion in his motion was an "honest" and "unfortunate mistake[]," Schwartz Reply Decl. ¶¶ 3, 23, and that he "had no intention to deceive the Court," *id.* ¶ 3.  The first Schwartz learned of the problem was when the Court issued its

---

[2] "Schwartz Decl." refers to Schwartz's declaration that is part of ECF No. 103 and "Cohen Decl." refers to Cohen's declaration that is part of ECF No. 104.

4

Order to Show Cause on December 12, 2023; he then spoke to Perry's colleague, who informed him that Cohen, not Perry, had been the source of the cases. *See* Schwartz Decl. ¶ 19; *see* Schwartz Reply Decl. ¶ 16. Schwartz professes that he "would have researched" the cases had he "believed that Mr. Cohen" was their source. Schwartz Decl. ¶ 20. He acknowledges that he "bear[s] the responsibility for" the "submission" and that "the inaccuracies" in it were "completely unacceptable," and he "sincerely apologize[s] . . . for not checking [the] cases personally before submitting them." *Id.* ¶¶ 21-22; *see* Schwartz Reply Decl. ¶ 2, 21-22.

As noted, Schwartz's and Cohen's recollections differ in one respect. Schwartz recalls that Cohen had, before sending him the cases on November 25, 2023, "communicated to [him] that cases would be provided by Ms. Perry," Schwartz Decl. ¶ 9; Schwartz Reply Decl. ¶ 12, which was one reason he believed the cases came from Perry. Cohen denies that he said anything of the sort to Schwartz, although he does not dispute Schwartz's claim that Schwartz mistakenly believed in good faith that the cases had come from Perry. Cohen Decl. ¶¶ 5-6, 14, 17-18. In the Court's view, this discrepancy is ultimately inconsequential. At most, Cohen told Schwartz on some unspecified date that Perry would later provide "cases"; Schwartz does not suggest, and the record does not show, that Cohen identified Perry as the source of *the* problematic cases Cohen provided on November 25, 2023. Moreover, even if Cohen did not say anything to Schwartz to suggest that Perry would provide cases, Perry's comments on the initial draft that Cohen forwarded to Schwartz provided a good faith basis for Schwartz's belief that Perry was the source. All of that is to say, the Court credits Schwartz's testimony that he genuinely, but mistakenly, believed that the cases had come from Perry; that he did not independently review the cases based on that belief; that he would have researched the cases had he known that Cohen was the source; and that he did not intend to deceive the Court.

In light of the foregoing submissions, the record is complete and two discrete issues are thus ripe for the Court's decision: first, whether Cohen's supervised release term should be

5

terminated early; and second, whether sanctions should be imposed in connection with the citation to non-existent cases. The Court will address each issue in turn.

## COHEN'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

The first issue can be addressed relatively swiftly. Pursuant to 18 U.S.C. § 3583(e)(1), a court "may terminate a term of supervised release . . . at any time after the expiration of one year of supervised release" if, after revisiting certain factors set forth in 18 U.S.C. § 3553(a), "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." In particular, "the Court is required to consider the factors in Section 3553(a) which bear on deterrence, public safety, rehabilitation, proportionality, and consistency." *United States v. Warren*, No. 21-CR-753 (LJL), 2024 WL 497690, at *1 (S.D.N.Y. Feb. 8, 2024) (cleaned up); *accord United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997). Significantly, early termination of supervised release "is not warranted as a matter of course." *United States v. Wheeler*, No. 20-CR-492 (GHW), 2023 WL 4561591, at *1 (S.D.N.Y. July 17, 2023) (internal quotation marks omitted). To the contrary, it is only "occasionally" justified due to "changed circumstances," such as "exceptionally good behavior by the defendant," that "render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *Lussier*, 104 F.3d at 36.

In light of the relevant Section 3553(a) factors, Cohen's latest motion for early termination is denied. Cohen's principal basis for his renewed motion was his October 2023 testimony in *State of New York v. Donald J. Trump*. As the Government notes, however, that testimony actually provides "reason to deny his motion, not [to] grant it." Gov't Opp'n 2. Specifically, Cohen repeatedly and unambiguously testified at the state court trial that he was not

guilty of tax evasion and that he had lied under oath to Judge Pauley when he pleaded guilty to those crimes. *See* Tr. 2188-90, 2317, 2433, 2437.[3]  To cite just a few examples:

> Q: Did you lie to Judge Pauley when you said that you were guilty of the counts that you said under oath that you were guilty of? Did you lie to Judge Pauley?
>
> A: Yes.[4]
>
> \*   \*   \*   \*
>
> Q: But you earlier testified today that you omitted, you didn't evade [taxes], isn't that right?
>
> A: I did say that.
>
> Q: Right. So you lied when you said that you evaded taxes to a judge under oath; is that correct?
>
> A: Yes.[5]
>
> \*   \*   \*   \*
>
> Q: And in response to those questions [from Judge Pauley], you lied to him; true?
>
> A: That's true.[6]
>
> \*   \*   \*   \*
>
> Q: So, sir, you lied at the time — you lied more than once in federal court, correct?
>
> A: Correct.
>
> Q: When the stakes affected you personally, right?
>
> A: Correct.
>
> Q: And you misled a federal judge?

---

[3]   "Tr." refers to the transcript, which can be found at ECF Nos. 88-1 and 88-2.

[4]   *Id.* at 2288.

[5]   *Id.* at 2289-90.

[6]   *Id.* at 2433.

A:  Yes.[7]

This testimony is more troubling than the statements that Cohen had previously made in his book and on television — statements that the Court had specifically cited in denying Cohen's third motion for early termination of supervised release, *see* ECF No. 87, at 4 (endorsement) — because it was given under oath.  It gives rise to two possibilities: one, Cohen committed perjury when he pleaded guilty before Judge Pauley or, two, Cohen committed perjury in his October 2023 testimony.  Either way, it is perverse to cite the testimony, as Schwartz did, as evidence of Cohen's "commitment to upholding the law." Def.'s Motion 1.  And either way, it would undermine, rather than serve, the purposes of sentencing incorporated by reference in Section 3583(e), including deterrence, rehabilitation, or proportionality, to terminate Cohen's supervised release before its natural expiration in November of this year.  At a minimum, Cohen's ongoing and escalating efforts to walk away from his prior acceptance of responsibility for his crimes are manifest evidence of the ongoing need for specific deterrence.[8]

In her reply on Cohen's behalf, Perry tries valiantly to paint his testimony in a more positive light.  She contends that the Government — which emphasized Cohen's testimony in its opposition, *see* Gov't Opp'n 2-3 — "mischaracteriz[es]" and "selective[ly]" quotes from Cohen's testimony.  Def.'s Reply 1-2.  She insists that Cohen's testimony "actually reflect[s] something very different from what the Government argues," namely an attempt "to articulate his belief that such conduct should not have been the basis for a criminal prosecution." *Id.* at 1.  But these efforts to turn a sow's ear into a silk purse fall flat.  Cohen's testimony was not, as

---

[7]    *Id.* at 2437.

[8]    To be clear, the Court does not rely in any way on the citation to non-existent cases in Cohen's motion as a basis for denying the motion.  Among other things, and as discussed below, the Court agrees that the primary fault for that problem lies with Schwartz.

8

Perry contends, a "clumsy" or "poorly worded" attempt to argue that, while he committed the crimes to which he pleaded guilty, the Government abused its prosecutorial discretion in charging those crimes. *Id.* at 1-2. To the contrary, he unambiguously testified that he "didn't" commit tax evasion and that he "lied" to Judge Pauley when he said that he had. Tr. 2289-90. Moreover, when given multiple opportunities to retreat from or clarify that testimony later, he stuck to his guns. *See id.* at 2433, 2437. Perhaps recognizing that the transcript belies her zealous efforts at spin, Perry falls back on an alternative argument: that Cohen's October 2023 testimony, if true, "would simply mean that Mr. Cohen, like countless other defendants before him and since, felt compelled to agree to a plea deal under severe pressure." Def.'s Reply 2. Cohen is certainly free to make that claim publicly, but he cannot do so and simultaneously ask the Court to shorten his sentence on the ground that he has demonstrated "an exceptional level of remorse and a commitment to upholding the law." Def.'s Motion 1.

In short, there was "a substantial change in circumstances" between Cohen's third failed application and this, his fourth. *Id.* at 1. But that change — his October 2023 testimony, which was either perjurious or confirms that he committed perjury before this Court — makes plain that Cohen should be required to serve out the remainder of his supervised release term. Accordingly, his motion for early termination of supervised release is DENIED.

## WHETHER SANCTIONS ARE WARRANTED

That leaves the question of whether sanctions should be imposed for the citation in Cohen's motion to three non-existent cases. In its Order to Show Cause, the Court cited three potential grounds for sanctions: Rule 11(b)(2), Section 1927, and the Court's inherent power.

There is no doubt that sanctions can be imposed on at least some of these grounds for the citation to non-existent cases. *See, e.g.*, *Mata v. Avianca, Inc.*, No. 22-CV-1461 (PKC), 2023

9

WL 4114965, at *16 (S.D.N.Y. June 22, 2023).[9]  Significantly, however, to impose sanctions on any ground here requires a finding of "bad faith."  That is plainly true for purposes of Section 1927 and the Court's inherent authority.  *See, e.g.*, *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 143 (2d Cir. 2023).  Indeed, a court may never impose sanctions pursuant to its inherent authority absent a finding, "by clear and convincing evidence, that the party or attorney knowingly submitted a materially false or misleading pleading, or knowingly failed to correct false statements, as part of a deliberate and unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly."  *Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 3483661, at *9 (S.D.N.Y. June 26, 2020) (internal quotation marks omitted).  And "[t]he standard for sanctions under Section 1927 is effectively the same . . . .  In practice, the only meaningful difference between an award made under Section 1927 and one made pursuant to the court's inherent power is that awards under Section 1927 are made only against attorneys while an award made under the court's inherent power may be made against an attorney, a party, or both."  *Id.* at *10 (cleaned up).  Rule 11 does not always require bad faith, but it does where, as here, a court raises the prospect of sanctions on its own initiative.  *See Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (per curiam).[10]  The power to impose sanctions *sua sponte* is, the Second Circuit has explained, "akin to the court's

---

[9] Strictly speaking, of course, Rule 11 of the Federal Rules of *Civil* Procedure applies only to civil cases and thus is inapplicable here.  Indeed, "the Federal Rules of Criminal Procedure do not have an equivalent to Rule 11 of the Federal Rules of Civil Procedure."  *United States v. Rankin*, 651 F. Supp. 3d 523, 562 (D. Conn. 2023).  At the same time, supervised release proceedings are not technically "part of a criminal prosecution."  *United States v. Doka*, 955 F.3d 290, 294 (2d Cir. 2020).  Given that and the robust case law interpreting and applying Rule 11, the Court concludes that it is helpful to look by analogy to the Rule 11 standards as well.

[10] Although Perry first raised the problem with Schwartz's filing, it was the Court that introduced the possibility of sanctions with its Order to Show Cause.  Naturally, Perry did not raise the issue of sanctions, let alone file a motion for sanctions, as she represents the same party as Schwartz.  Nor apparently did she alert Schwartz to the problem, and give him an opportunity to withdraw his submission, before filing her reply.  *See* Schwartz Reply Decl. ¶ 16.

inherent power of contempt," and, "like contempt, *sua sponte* sanctions in those circumstances should issue only upon a finding of subjective bad faith." *Id.*

In light of these standards, the Court is compelled to conclude that sanctions may not be imposed on Schwartz. His citation to non-existent cases is embarrassing and certainly negligent, perhaps even grossly negligent. But the Court cannot find that it was done in bad faith. Given Perry's comments on the initial draft (as conveyed by Cohen), Schwartz understandably believed that the cases had come from her. As Schwartz himself concedes, it was plainly his responsibility to review the citations before putting them in a submission to the Court. But the Court credits his explanation for his failure to do so: that he had confidence in the accuracy of the cases given Perry's reputation and that he never contemplated that the cases were non-existent. The Court also credits Schwartz's representations — that inclusion of the cases in his motion was an "honest" and "unfortunate mistake[]," Schwartz Reply Decl. ¶¶ 3, 23; that he "had no intention to deceive the Court," *id.* ¶ 3; and that he would have withdrawn the citations immediately if given the opportunity, *id.* ¶ 16 — and does not doubt the genuineness of his apologies and acceptance of responsibility. Perry, in responding to Schwartz's submission, asserts that "even a quick read" of the citations "should have raised an eyebrow." ECF No. 104, at 5 & n.5. That may be so, but, at most, it supports a finding of extreme carelessness, not intentional bad faith.[11] And it is noteworthy that the Government's lawyers — who presumably

---

[11] Perry suggests that the combination of the docket number of one of the non-existent cases and the sentence imposed on the purported defendant in that case should have alerted a reader that there was an issue. *See id.* The Court is not so sure — if only because the relevant docket number appears, or could have been read, to be the Second Circuit's docket number, which is assigned at the time of the appeal, not (as with the district court docket number, which Perry appears to be discussing) at the time of indictment. More significantly, the cases appeared to stand for an uncontroversial proposition: that district courts have exercised their discretion to grant early termination of supervised release. Perry herself cited many (real) cases for that proposition in the reply she filed on Cohen's behalf. *See* Def.'s Reply 3.

11

engaged in more than a "quick read" of Schwartz's motion and, thus, saw the citations at issue before filing their opposition — did not "notice[] something awry" themselves. *Id.* at 5.

So too, there is no basis to impose sanctions on Cohen himself. The Court's Order to Show Cause was limited to Schwartz and did not alert Cohen to the possibility of sanctions. But even if the Court had put Cohen on notice, sanctions would not be warranted. Cohen is a party to this case and, as a disbarred attorney, *see* Cohen Decl. ¶ 8, is not an officer of the Court like Schwartz. He was entitled to rely on his counsel and to trust his counsel's professional judgment — as he did throughout this case. *See id.* ¶¶ 7, 9-10. Given the amount of press and attention that Google Bard and other generative artificial intelligence tools have received, it is surprising that Cohen believed it to be a "super-charged search engine" rather than a "generative text service." *Id.* ¶ 20.[12] But the Court has no basis to question Cohen's representation that he believed the cases to be real. Indeed, it would have been downright irrational for him to provide fake cases for Schwartz to include in the motion knowing they were fake — given the probability that Schwartz would discover the problem himself and not include the cases in the motion (as he should have) or, failing that, that the issue would be discovered by the Government or Court, with potentially serious adverse consequences for Cohen himself.

---

[12] *See, e.g.*, David Pierce, *Google says its Bard chatbot isn't a search engine — so what is it?*, THE VERGE (Mar. 21, 2023), https://www.theverge.com/23649897/google-bard-chatbot-search-engine; Will Daniel, *Google CEO Sundar Pichai says 'hallucination problems' still plague A.I. tech and he doesn't know why*, FORTUNE (Apr. 17, 2023), https://fortune.com/2023/04/17/google-ceo-sundar-pichai-artificial-intelligence-bard-hallucinations-unsolved. Notably, Google appears to go "way out of its way to remind you that Bard is still very much an experiment. There are pop-ups and reminders everywhere reminding you that what Bard tells you might be wrong and a notice underneath the text box that says, 'Bard may display inaccurate or offensive information that doesn't represent Google's views.'" Pierce, *supra*; *see also* GOOGLE (Mar. 21, 2023), *Try Bard and share your feedback*, https://blog.google/technology/ai/try-bard ("While [large language models like Google Bard] are an exciting technology, they're not without their faults. For instance, . . . they can provide inaccurate, misleading or false information while presenting it confidently.").

In sum, as embarrassing as this unfortunate episode was for Schwartz, if not Cohen, the record does not support the imposition of sanctions in this case.

## CONCLUSION

For the foregoing reasons, the Court denies Cohen's latest motion for early termination of his supervised release and declines to impose sanctions for the citation in that motion to non-existent cases. The Clerk of Court is directed to terminate ECF No. 88.

SO ORDERED.

Dated: March 20, 2024
      New York, New York

                                            JESSE M. FURMAN
                                            United States District Judge